**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Greg Penteris,<br><br>Plaintiff,<br><br>v.<br><br>Turner Industries Group, L.L.C., a/k/a Turner Industries, LTD, Turner Industrial Maintenance, L.L.C., Turner Specialty Services, L.L.C., Citgo Petroleum Corporation, Disa, Inc. a/k/a Lenox Healthcare, and Priority Staffing, LTD.,<br><br>Defendants. | ) | Case No.: |

**COMPLAINT AND JURY DEMAND**

Plaintiff Greg Penteris (Mr. Penteris) is a person with a disability who has experienced discrimination at the hands of Defendants Turner Industries, Inc., Turner Industries Group, L.L.C.,, a/k/a Turner Industries, LTD, Turner Industrial Maintenance, L.L.C., Turner Specialty Services, L.L.C., (collectively, Defendant Turner or Turner), Citgo Petroleum Corporation (Defendant Citgo), Disa, Inc. a/k/a Lenox Healthcare (Defendant Disa), and Priority Staffing, LTD. (Defendant Staffing) on account of his disability. For his Complaint and Jury Demand, he states as follows:

## I. INTRODUCTION

1. This is an action against Defendants Turner, Citgo, Disa, and Staffing for discrimination based on Mr. Penteris' disability in violation of his rights protected by state and Federal law. This action is brought to redress Mr. Penteris' rights under the Americans with Disabilities Act

(ADA), as amended by the Americans with Disabilities Act Amendments Act (both hereinafter referred to collectively as the ADAAA), 42 U.S.C. §12101 *et seq*.

**II. JURISDICTION AND VENUE**

2. The basis for jurisdiction in this case is Federal Question, 28 U.S.C. § 1331 because a Federal statute, 42 U.S.C. §12101 *et seq*., is at issue.

3. This Honorable Court has supplemental jurisdiction over Mr. Penteris' state law claims pursuant to 28 U.S.C. § 1367.

4. The unlawful employment practices described herein were committed in the County of Cook, State of Illinois. Accordingly, venue in this Honorable Court is proper pursuant to 28 U.S.C. § 1391(b).

**III. PARTIES**

5. Mr. Penteris is, and, at all relevant times, was, a resident of Shorewood, County of Will, State of Illinois.

6. Defendant Turner is a corporation registered in the State of Louisiana and doing business in Cook County, Illinois. Defendant Turner is registered as a foreign corporation with the State of Illinois. This applies to each Turner defendant.

7. Defendant Citgo is a corporation registered in the State of Delaware and doing business in Cook County, Illinois. Defendant Citgo is registered as a foreign corporation in the State of Illinois.

8. Defendant Turner's "also known as corporation" is a dissolved Illinois corporation.

9. Defendant Disa, Inc. is a corporation registered in the State of Delaware and doing business in Cook County, Illinois. Defendant Disa, Inc. is also known as "Lenox Healthcare."

10. Defendant Priority Staffing, LTD. is a corporation registered in the State of Illinois and doing business in Cook County, Illinois.

11. Defendant Turner is a covered entity as defined by ADAAA, 42 U.S.C. § 12111(2) and 42 U.S.C. § 12111(5).

12. Defendant Turner was, at all relevant times, Mr. Penteris' employer.

13. Defendant Citgo is a covered entity as defined by ADAAA, 42 U.S.C. § 12111(2) and 42 U.S.C. § 12111(5).

14. Defendant Citgo was, at all relevant times, the principal employing Defendant Turner and owned the work site at which Mr. Penteris was employed. Defendant Citgo was, at all relevant times, a joint employer, along with Defendant Turner, of Mr. Penteris.

15. Defendant Disa is a covered entity, a public accommodation, as defined by ADAAA, 42 U.S. Code § 12181(2), 42 U.S. Code § 12181(6), and 42 U.S. Code § 12181(7).

16. Defendant Disa was, at all relevant times, the administrator of medical tests of Defendants Turner and Citgo under a services agreement or similar contract and administered the drug test described herein to Mr. Penteris. It was an agent of Defendants Turner and Citgo.

17. Defendant Staffing is a covered entity, a public accommodation, as defined by 42 U.S. Code § 12181(2), 42 U.S. Code § 12181(6), and 42 U.S. Code § 12181(7).

18. Defendant Staffing was, at all times, the laboratory testing entity employed by Defendants Turner and Citgo or, in the alternative, provided the facility and/or staffing for the testing. It was an agent of Defendants Turner and Citgo.

19. At the direction of Defendants Turner and Citgo, jointly or individually, Defendants Disa and Staffing performed medical or laboratory tests (the drug test), or provided the location for

the same, upon Mr. Penteris, rendered reports to Defendants Turner and Citgo, and otherwise provided services to Mr. Penteris for the benefit of Defendants Turner and Citgo.

## IV. FACTUAL BACKGROUND

### A. Mr. Penteris' Disability - Paruresis

20. Mr. Penteris has Paruresis and has suffered with it throughout his life. Paruresis, colloquially known as "shy bladder" syndrome, is the inability to urinate in public restrooms or in close proximity to other people.

21. Paruresis is generally considered to be an anxiety condition mentioned in the DSM IV under category 300.23. *See* **Exhibit A**, Report of Psychologist Kelly Hird.

22. Paruresis is a disability under the ADAAA.

23. Paruresis interferes with a major life function, or major body function, namely bladder and brain functions, 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(i)(1)(ii); further, it interferes with a major life activity, caring for oneself. *See* 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i).

24. Mr. Penteris was formally diagnosed with paruresis by Psychologist Kelly Hird in January 2014, and this report was provided to Defendants.

25. Prior to January 2014, Mr. Penteris knew about his difficulty urinating, reported it to Defendants Disa and Staffing, during his drug test, and avoided situations where he was required to urinate in public. For example, he would use single-stall restrooms far removed from foot traffic and human voices, avoid urinating until he returned home, or would distract himself with cellular telephone calls, running water, toilet flushing or other sounds when he needed to urinate in public.

26. When Mr. Penteris must urinate in public, such as in a busy area with foot traffic, a line for the restroom, or lack of privacy, he is generally unable to urinate.

27. Mr. Penteris' inability to urinate in public or non-private settings, even when he physically needs to urinate, leads to significant physical discomfort, increased anxiety, and further inability to urinate. At such times, his right food shakes uncontrollably.

28. In the past, Mr. Penteris has coped with job-related drug tests by receiving the order to take a drug test on the night shift and then, the following day, holding his first urine of the day until he arrived at the medical facility for the drug test. Under these circumstances, he is able to urinate.

**B. Mr. Penteris' Disability – Enlarged Prostate**

29. Mr. Penteris restates and realleges the preceding paragraphs 25 through 28 as if set forth in full herein.

30. Mr. Penteris suffers from enlarged prostate.

31. Enlarged prostate, or prostatic hyperplasia, results in the enlarging prostate gland putting pressure on the urethra, the tube through which urine flows. This eventually blocks urine flow and causes the person with enlarged prostate to be unable to empty his bladder.

32. Enlarged prostate interferes with a major life function, or major body function, namely bladder and brain functions, 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(i)(1)(ii); further, it interferes with a major life activity, caring for oneself. *See* 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i).

33. Mr. Penteris was formally diagnosed with enlarged prostate by Dr. Sandeep Sawhney, M.D., F.R.C.S. of Advanced Urology Associates (Dr. Sawhney) on December 24, 2014. **Exhibit B**, Medical Report of Dr. Sawhney.

34. Dr. Sawhney conveyed the diagnosis to Defendant Turner, and its agent, Dr. Barry Sachs, by telephone in Mr. Penteris' presence on December 24, 2013. After Dr. Sawhney ended the telephone call to Dr. Sachs, Mr. Penteris heard Dr. Sawhney comment, to Mr. Penteris, that Dr. Sachs was " . . . a real jerk."

35. Subsequently, Dr. Sawhney conveyed the diagnosis to Defendant Disa (a/k/a Lenox Healthcare) in writing. **Exhibit B**, Medical Report of Dr. Sawhney.

**C. Mr. Penteris Was Regarded as a Person with a Disability**

35. Mr. Penteris restates and realleges the preceding paragraphs 21 through 23 as if set forth in full herein.

36. At the time of the drug test, Mr. Penteris told the person administering the test he had difficulty urinating.

37. Mr. Penteris' attempts to urinate were recorded on a "shy bladder" log, referring to Mr. Penteris' disability. **Exhibit C**.

38. Mr. Penteris was, at all relevant times, perceived as having a disability, shy bladder. 29 C.F.R. § 1630.2(*l*)(1).

**D. The Drug Test**

39. On December 19, 2013, Mr. Penteris was told that he was selected for a random drug test. He was informed of this by Foreman Tony Kronenberger.

40. Mr. Penteris was escorted by a laborer to a trailer on Defendant Citgo's property where drug tests are administered by Defendants Disa and Staffing.

41. Various personnel of Defendant Disa and Defendant Staffing administered the drug test to Mr. Penteris.

42. Mr. Penteris was directed to urinate in a bathroom area with this walls where he could hear all the activity in the neighboring bathroom and could hear and be heard through the door.

43. During Mr. Penteris' attempts to urinate, he was subjected to knocking on the bathroom door, urging him to hurry, and other comments and noise directed at his by personnel of Defendant Disa or Defendant Staffing. Staff was required to take a safety class during the time Mr. Penteris was in the trailer. Staff instructed Mr. Penteris to pace up and down the hallway of the trailer so staff could observe him constantly from staff's vantage point of being in the safety class. It was extremely hot in the trailer, and Mr. Penteris was dressed warmly for the December weather. Mr. Penteris was instructed by staff to "hold it" and to "wait" until staff was finished with the class. This led to dehydration, spoiling any chance Mr. Penteris had to urinate when he felt the need to urinate.

44. With the holidays approaching, personnel of Defendant Disa or Defendant Staffing were busily going in and out of the trailer, discussing holiday plans, and generally being very loud.

45. The noise directed at Mr. Penteris and the commotion around him as he tried to urinate made it impossible for him to urinate because of his condition.

46. Mr. Penteris told personnel of Defendant Disa or Defendant Staffing that he had difficulty urinating.

47. Mr. Penteris asked personnel of Defendant Disa and Defendant Staffing for water to drink to try to encourage urination.

48. Personnel of Defendant Disa or Defendant Staffing provided Mr. Penteris water and documented that they gave him 40 ounces; however, Mr. Penteris was provided less than 40 ounces. He actually drank half of his own bottle of water and a total of three small paper cups of water provided by two different staff persons.

49. Mr. Penteris asked for a quieter area to attempt to urinate. Personnel of Defendant Staffing denied this request, except that one attempt was allowed in a larger bathroom. The larger bathroom provided no privacy, as staff waited right outside a stall. Mr. Penteris stated, “It is just not going to let me do it,” referring to his disabling condition of being unable to urinate on demand or in public places.

50. Personnel of Defendant Disa or Defendant Staffing documented Mr. Penteris’ attempts to urinate on a “shy bladder” log. **Exhibit C**.

51. Personnel of Defendant Disa or Defendant Staffing classified Mr. Penteris’ inability to urinate due to his disability as a “refusal” to urinate and he was construed as failing the drug tested and escorted to Head of Safety John Novak. Mr. Novak told Mr. Penteris to go to Physicians Immediate Care in Bolingbrook, Illinois. Physicians Immediate Care referred Mr. Penteris to Silver Cross Hospital in Joliet, Illinois, to ask about a referring physician. Silver Cross Hospital referred Mr. Penteris to Advanced Urology Associates, Dr. Sawhney. He saw Dr. Sawhney the following morning for an initial consultation and set an appointment for a cystoscopy on December 24, 2013.

**E. After the Drug Test—Termination and Ongoing Failure to Consider Reasonable Accommodation**

52. At all relevant times, Defendant Turner had a policy allowing persons who could not produce urine to go to a doctor and provide documentation of a medical reason for inability to urinate.

53. The day after the drug test, Isabelle Sanchez from Defendant Lenox called Mr. Penteris and told him to see a urologist. In fact, the policy that Mr. Penteris already followed, as set forth above in Paragraph 51, required seeing a referring physician. Mr. Penteris followed this policy, as well as Defendant Lenox' instructions, and went to Dr. Sawhney on December 24, 2014. On December 24, 2014, Dr. Sawhney called Dr. Barry Sachs of Defendant Turner or Defendant Disa, and informed him of Mr. Penteris' disabling condition, enlarged prostate.

54. Dr. Sawhney subsequently provided Dr. Isabelle Anderson, MRO (Dr. Anderson) of Defendant Disa (a/k/a Lenox Healthcare), with a written report concerning Mr. Penteris' disabling condition of enlarged prostate. **Exhibit B – Medical Report of Dr. Sawhney**.

55. Mr. Penteris further followed Defendant Turner's post drug-test policy and visited Dr. Kelly Hird. Dr. Hird diagnosed Mr. Penteris with paruresis. **Exhibit A**.

56. Dr. Sawhney provided the report of Dr. Kelly Hird to Dr. Isabel Anderson, MRO (Dr. Anderson), of Defendant Disa (a/k/a Lenox Healthcare). **Exhibit D** – Correspondence from Dr. Sawhney to Dr. Anderson.

57. Although not required to do so, Mr. Penteris paid for a drug test himself and provided it to Defendants. It was a test based on a hair sample, which is more accurate than a urine test. Mr. Penteris tested negative for drugs. **Exhibit E** – Hair follicle test results.

**F. Mr. Penteris' Employment with Defendant Turner**

58. Mr. Penteris restates and realleges the preceding paragraphs 28 and 57 as if set forth in full herein.

59. Mr. Penteris is a lifelong, experienced, skilled pipefitter.

60. Throughout his career, Mr. Penteris has been required to pass, and has passed, random drug tests.

61. Mr. Penteris has never used illegal drugs of any kind and rarely drinks alcohol.

62. Mr. Penteris has an exemplary work record and has never been subject to discipline.

63. Mr. Penteris is fully qualified to do his job, was doing his job, and can continue to do his job. His only need for a reasonable accommodation is to be allowed to:

a. undergo a more thorough and reliable hair follicle, saliva, or blood test for random drug testing rather than a urine test;

b. be allowed to urinate in a quiet place or have sound like a cellular phone conversation, running water, or flushing to distract him while he urinates; or

c. a similar accommodation.

64. The accommodations needed by Mr. Penteris are inexpensive and reasonable:

a. the cost of an alternative test is minimal. For example, a hair follicle test is inexpensive (under $200.00). Mr. Penteris is willing to bear the cost. **Exhibit F** – Test receipt;

b. there is no cost to allowing a quiet space for Mr. Penteris to urinate; and

c. there is no cost to similar accommodations; Defendant Turner has allowed methods like using the first urine of the day in the past when Mr. Penteris was a night-shift worker.

### G. Ongoing Violations

65. Mr. Penteris restates and realleges preceding paragraphs one through 64 as if set forth in full herein.

66. Despite repeated contact and provision of reports, compliance with Defendant Turner's policy regarding providing a medical reason for inability to urinate within a set time after being unable to produce urine for a drug test, and repeated explanations and requests for accommodates, Mr. Penteris has not worked since December 19, 2013.

67. Despite the above, Defendant Disa and Defendant Staffing have failed to modify their reports to show that Mr. Penteris did not fail or refuse a drug test.

68. Mr. Penteris remains unemployed, without income, and unable to return to work unless he completes a drug program at his own expense, approximately $3,000.00 and submits to increased random drug tests. The increased random drug tests, with accommodations being denied, would lead to the same result as the previous drug test described herein. Further, the increased random drug tests result in no benefit to the company, which would have to pay for working hours during which Mr. Penteris was being subjected to unnecessary and ineffectual testing.

69. At all relevant times, through the present and continuing, Defendants have failed and are utterly failing to engage in any good-faith, interactive process, or process of any kind, to determine a reasonable accommodation for Mr. Penteris' disabilities.

## V. CAUSES OF ACTION

**CAUSE OF ACTION I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT as amended by the AMERICAN WITH DISABILITIES ACT AMENDMENTS ("AD AAA"), 42 U.S.C. §12101 *et seq*.**

70. Mr. Penteris incorporates the preceding paragraphs one through 69 as if set forth in full herein.

72. Mr. Penteris is protected from disability discrimination by the ADAAA because he has a disability and/or was regarded as having a disability.

73. At all relevant times, Mr. Penteris was qualified to do his job at Defendant Turner, was doing the job, and had no negative disciplinary record.

74. Mr. Penteris disability or the fact he was regarded as having a disability was a motivating factor in Defendants' conduct, including, but not limited to, failing to accommodate Mr. Penteris' known physical impairment and disability, refusing to allow Mr. Penteris to utilize alternative methods of providing a urine sample for a drug test, refusing to allow him to utilize alternative methods of taking a drug test, classifying his inability to urinate due to disability as "refusal" to take a drug test, determining he failed the drug test, having him escorted from the worksite, and terminating his employment.

75. Mr. Penteris attempted to engage Defendants in an interactive process in an effort to obtain reasonable accommodations for his disability. This included, but was not limited to, telling staff he could not urinate, stating he could urinate in a quiet place, after drinking more time, or after holding his urine for a longer time, offering to take an alternative test, and complying with employment policies allowing a physical reason for the inability to urinate be verified by a physician and transmitted to the employer.

76. Despite Mr. Penteris' efforts, like those described in the preceding paragraph, Defendants have utterly failed to engage in any interactive, good-faith process to identify reasonable accommodations.

77. By refusing to engage in any interactive, good-faith process to identify reasonable accommodations, by not providing reasonable accommodations, and by outright refusal to provide reasonable accommodations, Defendants have refused Mr. Penteris' requests for reasonable accommodations.

78. Defendants' failure to engage in the interactive process in a good faith attempt to achieve a reasonable accommodation of Mr. Penteris' disability is a violation of the ADAAA.

79. Defendants' failure to reasonably accommodate Mr. Penteris' disability is a violation of the ADAAA.

80. Defendants' treatment of Mr. Penteris as set out above constitutes unlawful discrimination against Mr. Penteris because he is disabled as defined by the ADAAA.

81. Defendants' conduct was willful and/or undertaken with disregard for Mr. Penteris' Federally-protected rights.

81. As a proximate result of Defendants' actions as set forth above, Plaintiff has suffered and will, in the future, suffer, non-exhaustively, emotional distress, mental anguish, pain and suffering, inconvenience, humiliation, loss of enjoyment of life, medical expenses, and the loss of wages and benefits.

82. Mr. Penteris requests relief as set forth below.

**CAUSE OF ACTION II: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT**

83. Mr. Penteris realleges the preceding paragraphs one through 69 as if set forth in full herein. An action is pending in front of the Illinois Department of Human Rights; therefore, Mr. Penteris' Illinois Human Rights Act complaint is not ripe. He expressly reserves the right to file

an amended complaint adding this cause of action, or otherwise bring this cause of action at a later time.

## VI. REQUEST FOR RELIEF

Plaintiff Greg Penteris respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment against Defendants, jointly and severally, for violating Mr. Penteris' rights under the ADAAA;

B. Grant equitable relief to ensure that Defendants will not, in the future, engage in any employment practice which discriminates on the basis of disability and violates the ADAAA;

C. Order Defendants Turner and Citgo, jointly and severally, to make Mr. Penteris whole by awarding him his lost earnings and the value of his lost benefits;

D. Order Defendant Turner to reinstate Mr. Penteris to his previous position or award him his front pay in lieu of reinstatement;

E. Order Defendants, jointly and severally, to make Mr. Penteris whole by providing compensation for pecuniary losses, including, but not limited to, costs to be incurred for health and life insurance premiums and costs associated with seeking new employment;

F. Order Defendants, jointly and severally, to make Mr. Penteris whole by providing compensation for non-pecuniary losses, including, without limitation, emotional distress, mental anguish, pain and suffering, inconvenience, humiliation, and the loss of the enjoyment of life;

G. Award Mr. Penteris punitive damages against Defendants, jointly and severally, for acting with malice or reckless indifference in violating Mr. Penteris' protected rights under the ADAAA;

H. Award Mr. Penteris, against Defendants, jointly and severally, a judgment for his reasonable attorney fees and costs pursuant to the ADAAA;

I. Award Mr. Penteris pre-judgment interest against Defendants, jointly and severally, as allowed by law; and

J. Grant such further relief as this Honorable Court deems necessary and proper.

## VII. JURY DEMAND

Plaintiff Greg Penteris hereby demands a trial by jury of all issues herein.

Respectfully submitted,

GREG PENTERIS

/s/Kelli Dudley

Kelli Dudley
Attorney for Plaintiff Greg Penteris

Kelli Dudley
Law Office of Kelli Dudley
2938 East 91st Street
Chicago, Illinois 60617
Telephone: 312-771-9770
Email: attorneykelli@sbcglobal.net
ID #6279068