IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Greg Penteris, | Civil Action No. 14-cv-03490 |
| Plaintiff, | Honorable Sara L. Ellis |
| v. | |
| CITGO Petroleum Corporation, Disa, Inc. a/k/a Lenox Healthcare, and Priority Staffing, LTD., | |
| Defendant. | |

**PLAINTIFF GREG PENTERIS' COMBINED RESPONSE TO DEFENDANT CITGO PETROLEUM CORPORATION'S MOTION TO DISMISS AND MEMORANDUM**

Plaintiff Greg Penteris (Mr. Penteris) is a person with a disability who experienced discrimination while working at a job site provided by CITGO Petroleum Corporation (CITGO) and largely under the supervision of CITGO staff and agents, particularly drug-testing companies. The discrimination was on account of his disability.

As an initial note, Plaintiff intended to attach exhibits to his Complaint. Defendant pointed out the exhibits were not attached, and counsel forwarded copies, intending to seek leave to amend the complaint and include exhibits. Upon learning that some exhibits should be under seal, Plaintiff decided not to amend and, instead, will move to file the documents under seal.

**RESPONSE TO MOTION TO DISMISS**

CITGO has filed a separate motion to dismiss, but it does not have numbered paragraphs, does not make any allegations beyond saying that CITGO was not an employer, and that CITGO's attorney called Mr. Penteris' attorney. Mr. Penteris, in response, says only that CITGO

1

is liable as an employer. Therefore, Mr. Penteris will address CITGO's arguments, made exclusively in its memorandum, in the Memorandum below.

Plaintiff, Greg Penteris, prays this Honorable Court deny the Motion to Dismiss or, in the alternative, grant him leave to replead.

**MEMORANDUM IN SUPPORT OF MR. PENTERIS' RESPONSE TO CITGO'S MOTION TO DISMISS**

**I.   INTRODUCTION**

This is an action against CITGO and two other entities for violation of the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act (both hereinafter referred to collectively as the ADAAA), 42 U.S.C. § 12101 *et seq*. Mr. Penteris seeks recovery from CITGO for violating provisions of the ADAAA related to employment. 42 U.S. Code § 12111(2) and 42 U.S. Code § 12111(5). He also alleges that CITGO was a principal of Defendants Turner (hereinafter, "Turner"), Disa, Inc. and Priority Staffing, LTD. (hereinafter, collectively "Agents"). He alleges Agents violated the ADAAA by failing to accommodate his disabilities, paruresis and enlarged prostate, making it impossible for him to produce a urine sample for a urine test. Agents did not provide any accommodation, such a quiet, private place to urinate, additional time, or even additional water. Agents treated Mr. Penteris' disability-related inability to produce urine as a refusal to produce urine. Accordingly, CITGO escorted Mr. Penteris off its premises, from which he remains banned. Mr. Penteris states a cause of action. He alleges CITGO discriminated against him as his employer by not allowing an accommodation such as additional time to urinate or an alternative method of testing and by escorting him off its premises.

Mr. Penteris filed a claim as part of the present Complaint relating to the Illinois Human Rights Act (IHRA). That claim merely states that Mr. Penteris has claims related to the IHRA,

they are not yet ripe because an action is pending against some defendants in front of the Illinois Department of Human Rights, and that Mr. Penteris merely does not waive his claims. It is obvious that Mr. Penteris only included this claim to clarify that he was not waiving his right to bring it when it is ripe.

## II. FACTS

CITGO is an entity covered by the ADAAA. Mr. Penteris cited two sections of the ADAAA related to coverage, 42 U.S.C. § 12111(2) and 42 U.S.C. § 12111(5). Complaint, ¶ 13. Mr. Penteris alleged CITGO was the principal of Defendants Turner and Agents. *Id.* at 11. Mr. Penteris alleged Turner was subject to the ADAAA, 42 U.S.C. § 12111(2) and 42 U.S.C. § 12111(5), and was his employer. *Id.* at 11 – 12. Mr. Penteris alleged Agents were employed by CITGO. *Id.* at 16 – 19. Mr. Penteris cited three specific sections of the ADAAA relating to Agents, 2 U.S. Code § 12181(2), 42 U.S. Code § 12181(6), and 42 U.S. Code § 12181(7). *Id.* at 17. Agents are the laboratory testing entity employed by CITGO. Complaint, ¶ 18; Defendant's Memorandum, Page 7. Agents performed testing on Mr. Penteris. Complaint, ¶ 19.

Mr. Penteris has paruresis, colloquially known as "shy bladder syndrome." Complaint, ¶ 20. This disability prevents Mr. Penteris from urinating in public restrooms or in close proximity to other people. *Id.* The disability is a recognized disability, falls under the coverage of the ADAAA, and is an anxiety condition listed in the DSM IV. *Id.* at 21 – 23. **Exhibit A**, the report of Psychologist Kelly Hird, discusses the nature of paruresis. It is an exhibit that was intended to be attached to the Complaint; counsel now recognizes it should be submitted under seal and will move accordingly. Mr. Penteris also suffers from enlarged prostate, also known as prostatic hyperplasia, a disability that can impede urine flow. *Id.* at 30 – 31.

Mr. Penteris informed Agents during his drug test about his difficulty urinating. Complaint, ¶ 25. **Exhibit B** (to be submitted under seal) is a document from Agents on which it is written, "unable to urinate." Mr. Penteris remarked to Agents, "[i]t is just not going to let me do it." Complaint, ¶ 49. **Exhibit C**, to be submitted under seal and in the record as an exhibit to Defendant Priority Staffing's Motion to Dismiss, shows plainly that CITGO and Agents knew of the disability and regarded Mr. Penteris as a person with a disability. The exhibit is a "shy bladder log," the common name for paruresis. *Id*. at 50. In the past, Turner, CITGO's agent or joint employer, had allowed Mr. Penteris the testing alternative of using his first urine of the day, waiting to urinate until he got to a testing facility. *Id*. at 64.

Even though Mr. Penteris let Agents know about his difficulty urinating, he was directed to urinate in a bathroom area with thin walls, allowing him to hear activity in the next bathroom and in the facility. Complaint, ¶ 42. His anxiety and inability to urinate were aggravated by people knocking on the bathroom door, urging him to hurry, and making other comments and noise. *Id*. at 43 - 45. Rather than relaxing calmly between attempts to urinate, Mr. Penteris was made to pace up and down a hall so Agent's staff member could take a class while keeping Mr. Penteris in his view. *Id*. at 43. This activity, along with the extreme heat in the trailer, agitated and dehydrated Mr. Penteris, making it even less likely he would be able to urinate. *Id*. At one point, Mr. Penteris felt he could urinate and wanted to seize the moment, but was instead directed to "hold it" and "wait" until staff finished the class. *Id*.

Mr. Penteris asked Agents for water to increase his likelihood of urination. Complaint, ¶ 47. Agents recorded that he was given 40 ounces of water. *Id*. at 48. However, he was not given the full 40 ounces. *Id*.

Mr. Penteris asked for a quieter area to attempt. Agents denied this request, except that one attempt was allowed in a larger bathroom. The larger bathroom provided no privacy, as staff waited inside. Mr. Penteris stated, "It is just not going to let me do it," referring to his disabling condition of being unable to urinate on demand or in public places. Complaint, ¶ 49.

CITGO's agents classified Mr. Penteris' inability to urinate due to his disability as a "refusal" to urinate and he was construed as failing the drug tested and escorted to the head of safety for CITGO. Complaint, ¶ 50. Agents did not even give Mr. Penteris the full three hours before declaring that he had not provided a sample (**Exhibits B, C**; to be submitted under seal) and escorting him to CITGO's security officer.

Mr. Penteris followed CITGO policy and saw a medical doctor for confirmation of the reason he was unable to urinate and also, going above and beyond the policy, provided a hair follicle drug test showing he tested negative for drug use. Complaint, ¶ 52 – 57.

CITGO's failure to accommodate Mr. Penteris with regard to his disability and Agents' failure to follow their own policies and Federal guidelines, along with the refusal to provide or even consider any reasonable accommodation, resulted CITGO firing Mr. Penteris by escorting him off its grounds. Complaint, ¶ 74 - 81. He remains banned.

### III. LEGAL STANDARD GOVERNING DISMISSAL

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. (8)(a), "in order to `give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) [quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)]. Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders `naked assertion[s]' devoid of `further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 556).

CITGO urges a heightened pleading standard for cases against multiple defendants, relying on citations from outside the Seventh Circuit, *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 48 (1st Cir. 2009) and *Marcilis v. Township of Redford,* 693 F.3d 589 (6th Cir. 2012). These cases are not mandatory authority for this Honorable Court. In fact, the Seventh Circuit approach is more relaxed. In the Seventh Circuit, even a complaint alleging fraud and subject to the particularity requirements of Rule 9(b) need only ". . . inform each defendant of the nature of his alleged participation in the fraud." *Vicom v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal citations omitted). This standard would not require the entire complaint be analyzed separately as to each defendant.

Mr. Penteris fairly informs CITGO of the claims against it in his complaint. CITGO hired Turner, who acted as its agent (Complaint, ¶ 14), and discriminated against Mr. Penteris through its own actions (*Id.* at 74 – 81) and through those of Priority Staffing and Disa (Id. at 16, 18 – 19). CITGO also hired Priority Staffing and Disa (*Id.*). Turner's discriminatory actions are thoroughly described (*Id.* at 74 – 81), as are those of Priority Staffing and Disa (*Id.* at 39 – 57). CITGO can fairly answer these allegations by admitting or denying the entities were its agents

or, in the case of Turner, agent or joint employer. It can supply information in its control about the actions of these entities, it can investigate the allegations, and it can admit or deny the allegations. The complaint is clear, intelligible, and requires an answer. Therefore, the motion to dismiss at the pleading stage must be denied.

## IV. ARGUMENT

### A. Mr. Penteris states a claim that CITGO was his employer.

Mr. Penteris alleges CITGO was a joint employer along with Turner. Complaint, ¶ 14. CITGO sets forth case law purporting to require Mr. Penteris to prove the existence of the employment relationship at this early stage. None of the district court cases are binding precedent, and it stretches the imagination to comprehend what one case, from Texas, has to do with anything this Honorable Court, sitting in Chicago, would decide.

The first case cited, *Brown v. City of North Chicago,* No. 04 C 1299, 2006 WL 1840802 (N.D. Ill. June 28, 2006) concerned summary judgment, not a pleading standard to survive a motion to dismiss. The court makes clear it is enunciating standards required for one to prevail (*Id.* at 5), rather than survive at the initial pleading stage. More importantly, the type of "employment relationship" at issue is not at all the same as whether Mr. Penteris worked for CITGO at its refinery. Instead, the issue was the distinction between an independent contractor and an employee. (*Id.* at 9). In the instant case, CITGO does not allege Mr. Penteris is an independent contractor. In fact, its motion says nothing to explain how Mr. Penteris, were he not an employee, would be subject to being ordered to submit to a drug test, ferried across CITGO grounds to a facility operated on CITGO grounds by an agent of CITGO, and then escorted summarily off CITGO grounds by CITGO's head of security.

7

CITGO cites Page 3 of another district opinion, *Shah v. Littelfuse Inc.,* No. 12 CV 6845, 2013 WL 1828926 (N.D. Ill Apr. 29, 2013), as dismissing a complaint that did not contain factual allegations demonstrating an entity was a joint employer. First, the language does not appear on Page 3 in this case concerning discrimination on the basis of national origin and religion in violation of Title VII. In fact, the allegations made were that the entity was in charge of various administrative tasks, like issuing paychecks. *Id*. at 8. In the instant case, Mr. Penteris alleges he was escorted across CITGO property to a trailer on CITGO property. Complaint, ¶ 40. He endured tests by agents employed by CITGO. *Id*. at ¶¶ 16, 18 – 19. He was then escorted off CITGO property by its Head of Safety. *Id*. at 51. The CITGO actions described are far more than administrative. CITGO's agents provided further direction, which Mr. Penteris followed, the next day. *Id*. at 53. Making the decision to ban Mr. Penteris from CITGO, escorting his to and from the trailer and off the property, and hiring agents and directing agents to administer a drug test to him that resulted in his being fired were the actions of an employer. CITGO does not opine about what it was other than an employer.

In *Shah*, the Court criticizes the plaintiff's reliance on *Piano v. Ameritech/SBC*, 02 C 3237, 2003 WL 260337 (N.D. Ill. Feb. 5, 2003) because *Shah* involved a Plaintiff suing an employment agency. *Piano*, in contrast, more like the instant case, involved a plaintiff suing the principal, the client of the employment agency. *Shah*, 2013 WL 1828926 at 9. The *Shah* court distinguished the claim it dismissed from the *Piano* claim as it was treated on summary judgment: "The [*Piano*] court reasoned that "the joint employer theory should apply in cases in which an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which she is assigned, where that employer exerts a significant amount of control over the individual." *Id*. Like the *Piano* plaintiff and unlike the *Shah* Plaintiff, Mr.

Penteris worked for an organization analogous to an employment agency, Turner, and an organization, CITGO, where he performed the work, was supervised, and subjected to instruction—including demanding he urinate and shuttling him about the worksite and, ultimately, off of it. It is hard to imagine how much more control an entity could exert over an employee than to insist, on pain of firing, that he or she urinate on demand.

CITGO does not provide a copy of the non-local case, *EEOC v. Valero Refining Texas, L.P.,* No. 3:10-CV-398, 2013 WL 1168620 (S.D. Tex. Mar. 13, 2013). However, CITGO admits the standard used in the case applies to summary judgment. CITGO Memorandum, P. 3. Review of an unofficial excerpt (http://www.davidcholmeslaw.com/blog/eeocs-joint-employer-claim-against-valero-fails/, last accessed 8/2/2014) of the case shows that the judge considered two tests enunciated by the Fifth Circuit and applied a test developed by the Second Circuit. It is hard to fathom how the Texas judge's analysis of Fifth and Second Circuit case law has any bearing on the instant case, particularly in light of the Seventh Circuit case law on point discussed above.

Mr. Penteris has stated a claim that CITGO was his employer and the motion to dismiss must be denied.

### B. Mr. Penteris Has Not "Admitted" CITGO was Not His Employer.

Defendant claims that Mr. Penteris' mere acknowledgement of his employment with Turner precludes an employment relationship with CITGO. First, CITGO misrepresents Mr. Penteris' words in his Complaint. Mr. Penteris does allege that Turner was his employer. Complaint, ¶ 12. He then further alleges: "Defendant Citgo was, at all relevant times, the principal employing Defendant Turner and owned the work site at which Mr. Penteris was employed. Defendant Citgo was, at all relevant times, a joint employer, along with Defendant Turner, of Mr. Penteris." *Id*. at 14. The action-packed third page of Shah, 2013 WL 1828926

makes another appearance in CITGO's brief as a citation (Memorandum, P. 4). However, no language about an express allegation that one entity or another is an employer appears on page three. Page four has a discussion about Mr. Shah's allegation that two companies were his joint employers. *Shah*, 2013 WL 1828926 at 9. Regardless, Mr. Penteris did not allege, in the Complaint CITGO urges be dismissed, that Turner was his sole employer. The Motion to Dismiss must be denied.

C. **Mr. Penteris Sufficiently Alleges Factual Allegations that CITGO was a Joint Employer.**

Mr. Penteris alleges he was escorted across CITGO property to a trailer on CITGO property. Complaint, ¶ 40. He endured tests by agents employed by CITGO. *Id*. at ¶¶ 16, 18 – 19. He was then escorted off CITGO property by its Head of Safety. *Id*. at 51. The CITGO actions described are far more than administrative. CITGO's agents provided further direction, which Mr. Penteris followed, the next day. *Id*. at 53. As pointed out above, there is possibly no greater control that the power to make a person urinate on demand as a condition of retaining her or his job.

CITGO relies on *Shah*, 2013 WL 1828926 which is distinguished above. CITGO also cites Page 12 of *Wilcox v. Allstate Corp.*, No. 11 C 814, 2012 WL 6569729 (N.D. Ill. Dec. 17, 2012). The quoted language does not appear on Page 12. The case concerns summary judgment and whether a new allegation could be introduced in a list of disputed or undisputed facts. The quoted language does appear, but not in discussing joint employer analysis—simply in considering whether an entity was an employer at all. *Id*. at 22. Nonetheless, Mr. Penteris has alleged that CITGO did far more that provide him a phone or a pencil (*See id*; CITGO's Memorandum, P. 5). The issue raised in Mr. Penteris' complaint is not merely that CITGO provided Mr. Penteris a cup or even provided it to him while he was on its property; the problem

10

the Complaint raises is that CITGO insisted Mr. Penteris urinate in the cup on specified terms at a specified time and place and that he was escorted off the premises and terminated by CITGO's head of security when he was unable to do so for a disability-related reason. The Motion to Dismiss must be denied.

**D.     In Addition to Joint Employer Status, Mr. Penteris States an Alternative Ground for Liability, Agency Law.**

Mr. Penteris alleged CITGO was the principal of Defendants Turner and Agents. Complaint, ¶ 11. He alleges Turner subjected him to the test and would not provide reasonable accommodations. *Id*. at 63 – 67. He alleged Agents failed to accommodate his disability. *Id*. at 41 – 56.

A principal is responsible for the acts of agents. This principal applies to the ADAA. The Seventh Circuit Court of Appeals has emphasized this in focusing on the use of the word agent in the law: ". . . we explained that "the actual reason for the `and any agent' language in the definition of `employer' was to ensure that courts would impose respondeat superior liability upon employers for the acts of their agent . . . ". *Smith v. Metropolitan Sch. Dis. Perry Twp.,* 128 F. 3d 1014, 1024 (7th Cir. 1997).

Mr. Penteris has sufficiently alleged that CITGO is responsible for the discriminatory actions of its agents, Turner, Priority Staffing and Disa. The Motion to Dismiss must be denied.

**E.     Mr. Penteris did not allege any violation of the Illinois Human Rights Act against Defendant.**

Mr. Penteris has filed claims with the Illinois Department of Human Rights against two parties, including CITGO. His pleading makes it clear the claim in not ripe and that he is simply reserving his right to bring the claim in the future.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss must be denied or, in the alternative, granted without prejudice and with leave to replead.

Respectfully submitted,
GREG PENTERIS

/s/Kelli Dudley
Kelli Dudley

Attorney for Plaintiff Greg Penteris
Kelli Dudley
Law Office of Kelli Dudley
9130 S. Houston Ave., 1st Floor
Chicago, IL 60617-4319
Telephone: 312-771-9770
Email: attorneykelli@sbcglobal.net
ID #6279068

## CERTIFICATE OF SERVICE

I, Kelli Dudley, an attorney, hereby certify that on or before August 22, 2014, I provided service to the person or persons who have appearances on file by the following means:
Automated electronic service
Signature: s/ Kelli Dudley
Address: 2938 East 91st Street, Chicago, Illinois 60617
Date: August 22, 2014
Telephone Number: 312-771-9770
attorneykelli@sbcglobal.net