# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREG PENTERIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 3490 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CITGO PETROLEUM CORPORATION, | ) |
| DISA, INC., a/k/a Lenox Healthcare, | ) |
| and PRIORITY STAFFING, LTD., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

After he was unable to provide a urine sample for a random drug test, Plaintiff Greg Penteris was terminated from his job as a pipefitter. Claiming that he suffers from "shy bladder syndrome," also known as paruresis, and an enlarged prostate, he filed this lawsuit against Defendants Citgo Petroleum Corporation ("Citgo"), Disa, Inc. ("Disa"),[1] and Priority Staffing, Ltd. ("Priority Staffing"), alleging that they violated Titles I and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12101 *et seq.*, by discriminating against him and failing to provide reasonable accommodations in the administration of the drug test. As a second claim, Penteris pleads a violation of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.*, although he acknowledges in the complaint that this claim is not ripe. Pending before the Court are Defendants' motions to dismiss [21, 26, 38]. The ADA Title III claim, asserted only against Disa and Priority Staffing, may proceed at this stage because Penteris adequately alleges that those Defendants qualify as "public accommodations" under the statute. The ADA Title I claim, asserted only against Citgo, survives Citgo's motion to dismiss because,

---

[1] Penteris claims that Disa is also known as Lenox Healthcare. Disa responds that Lenox Healthcare does not exist as an entity and that it is not also known by that name. *See* Doc. 39 at 1 n.1.

drawing all inferences in Penteris' favor, he sufficiently alleges that Citgo, with Turner, was his joint employer and had knowledge of his alleged disability. The IHRA claim is dismissed, however, as it is not ripe for adjudication.

## BACKGROUND[2]

In December 2013, Penteris was working for Turner Industries Group, L.L.C., Turner Industrial Maintenance, L.L.C., Turner Specialty Services, L.L.C. (collectively, "Turner"),[3] and Citgo on Citgo property. On December 19, 2013, Penteris' employer selected him for a random drug test. Disa and Priority Staffing personnel[4] administered the test and directed Penteris to provide a urine sample in the bathroom area of a trailer on Citgo property. The bathroom area had thin walls so that Penteris could hear what was going on outside the room. He also was interrupted by Disa or Priority Staffing personnel while attempting to urinate and urged to hurry up. At some point, because the personnel monitoring the drug test had to attend a safety class, Penteris was instructed to pace up and down the trailer hallway so he could be watched while the personnel attended class. This kept Penteris from attempting to urinate while the class was in session. As time passed, Penteris became dehydrated, due in part to the temperature in the trailer and the fact that he was dressed for the December cold.

Penteris informed Disa or Priority Staffing personnel that he had difficulty urinating and asked for water. Disa or Priority Staffing personnel documented that they gave him forty ounces

---

[2] The facts in the background section are taken from Penteris' Complaint and the exhibits attached thereto (which were filed separately) and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

[3] The Turner companies were previously named as Defendants in this lawsuit. They were voluntarily dismissed on July 23, 2014. Doc. 30.

[4] Disa administers medical tests for companies such as Citgo or Turner. Priority Staffing provides laboratory testing for the drug tests that Disa administers.

of water to drink over the course of two and a half hours on a shy bladder log. Penteris claims, however, that he received less than this amount and that he instead drank half of his own bottle of water in addition to three small cups of water provided by Disa or Priority Staffing personnel. Penteris also asked for a quieter space to urinate. He was allowed to use a larger bathroom for one attempt, but in that case the personnel monitoring him waited right outside the stall. After that attempt, Penteris remarked that "[i]t is just not going to let me do it." Compl. ¶ 49.

After three hours passed, Disa or Priority Staffing personnel terminated the collection procedure in accordance with the instructions on the shy bladder log. Deemed to have failed the test, Disa or Priority Staffing personnel escorted Penteris to John Novak, the head of safety. Novak told Penteris to go to Physicians Immediate Care in Bolingbrook, Illinois, which referred him to Silver Cross Hospital in Joliet. Isabelle Sanchez, who works for Disa, also told Penteris to see a urologist. Ultimately, Penteris met with Dr. Sawhney at Advanced Urology Associates the following day and for further testing on December 24. Dr. Sawhney diagnosed Penteris with an enlarged prostate on December 24, 2013, and conveyed that diagnosis to Turner and Disa. An enlarged prostate can block urine flow and cause difficulty initiating urination.

Penteris also met with Dr. Kelly Hird, a psychologist, who diagnosed him with paruresis in January 2014. Paruresis, also known as shy bladder syndrome, is an anxiety condition characterized by an individual's fear of urinating in public restrooms when others are present. This diagnosis, although new, reflected issues with which Penteris had been dealing for some time through other self-designed coping mechanisms. For example, Penteris would avoid situations where he had to urinate in public and wait until he returned home, use single-stall restrooms removed from foot traffic and human voices, and distract himself by making telephone calls, running water, flushing the toilet, or making other sounds. When he was forced to take a

3

drug test for work in the past, he had often received the order on the night shift and then held his first urine of the day until he arrived at the medical facility for the drug test. Penteris provided the paruresis diagnosis to Defendants and Turner. On his own initiative, Penteris took a drug test based on a hair sample on December 27, 2013, which tested negative. He provided this result to Defendants and Turner as well. Nonetheless, Penteris has not worked since December 19, 2013.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. ADA Claim against Disa and Priority Staffing

Disa and Priority Staffing have both moved to dismiss Penteris' ADA claim against them, arguing that they did not employ Penteris and that they are not entities required to provide public accommodations such that an ADA claim could be brought against them absent an employment relationship. Penteris acknowledges that he is not basing his ADA claim against Disa and

Priority Staffing on the existence of an employment relationship, and thus the Court must only consider whether Penteris has stated a claim against Disa and Priority Staffing under Title III of the ADA, which prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a).

Under Title III, the owner or operator of a facility open to the public "cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999). The phrase "public accommodation" is to be "construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001). Penteris alleges that Disa and Priority Staffing are public accommodations, explaining in his response briefs that they are health care providers or other service establishments whose operations affect commerce. *See* 42 U.S.C. § 12181(7)(F) (defining "public accommodation" to include a "professional office of a health care provider, hospital, or other service establishment"). But Disa and Priority Staffing suggest that the testing facility, which was on Citgo property, cannot be considered a place of public accommodation because the testing occurred on private property and not at the office of a health care provider. *See Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) (public accommodation claim failed where retirement plan was "a private deal, not a public offering"). Disa and Priority Staffing, however, are asking the Court to go beyond the complaint to make this determination, which the Court cannot do in considering a motion to dismiss. Disa and Priority Staffing also cite to *Palonis v. Jewel Food Stores, Inc.*, 383 F. Supp. 2d 1072 (N.D. Ill. 2005), for the proposition that "drug testing facilities are *not* health care

services." Doc. 74 at 2; *see also* Doc. 47 at 2. *Palonis* did not consider a Title III claim but instead found, in the context of a state law negligence claim, that the defendant, a drug testing laboratory, did not engage in a "healing art," as defined by Illinois law, when it administered a drug test. *Id.* at 1074. Even if drug testing is not considered a "healing art" or even "health care services" under Title III, however, it may still qualify as a service that affects commerce, bringing it within Title III's definition of a "public accommodation." Thus, at this stage, accepting Penteris' well-pleaded facts and drawing all reasonable inferences in his favor, the Court finds that he has sufficiently alleged that Disa and Priority Staffing are places of public accommodation.

Disa and Penteris also argue that Penteris has not adequately alleged how they denied him access to a public accommodation, although their argument is structured in terms more applicable to a Title I claim for failure to accommodate. Priority Staffing maintains that it complied with the North American Substance Abuse Program guidelines and federal regulations for drug testing, but these are questions best resolved on summary judgment or at trial. Penteris responds that Disa and Priority Staffing did not comply with a different federal regulation that requires private entities offering examinations related to licensing or certification for professional or trade purposes to offer such examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 28 C.F.R. § 36.309(a). Priority Staffing contends that Penteris' reliance on 28 C.F.R. § 36.309(a) is misplaced because there is no precedent to apply this regulation to random drug tests, but at this stage Priority Staffing has not presented the Court with a basis to prevent Penteris from pursuing his Title III claim when the plain language of § 36.309(a) suggests that it applies to any examination related to licensing for trade purposes, which allegedly includes the drug test at

6

issue here. When Penteris informed Disa or Priority Staffing of the need for accommodations is a factual issue to be decided after discovery.[5]

Although Penteris' claim appears to be a novel one—the Court has been unable to find any case law under Title III regarding the specific situation at hand—drawing all reasonable inferences in Penteris' favor, as the Court must at this stage, the Court finds that he has stated a claim against Disa and Priority Staffing under Title III of the ADA. Penteris is likely to face several obstacles in establishing his Title III claim, but the Court cannot address these issues on the record before it.[6]

## II.  ADA Claim against Citgo

Unlike the claim against Disa and Priority Staffing, Penteris brings his claim against Citgo under Title I of the ADA, alleging that, with Turner, Citgo was his joint employer or, alternatively, that Turner was Citgo's agent. Citgo argues, however, that Penteris has failed to sufficiently allege facts to state a claim against it on these theories. The Seventh Circuit recently clarified the standard for determining whether an entity should be considered a joint employer. *See Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697 (7th Cir. 2015) (analyzing whether defendant was an employer for Title VII purposes).[7] The *Love* court reviewed the two tests that had been

---

[5] To the extent Disa and Priority Staffing make other arguments regarding Penteris' failure to adequately allege denial of access, these arguments are undeveloped and so the Court will not address them here. *See Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").

[6] The Court notes that Penteris is limited to injunctive relief under his Title III claim against Disa and Priority Staffing. *See* 42 U.S.C. § 12188(a)(1); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075–76 (7th Cir. 2013) ("[T]he statute itself makes clear that injunctive relief under Title III of the ADA (and only injunctive relief—damages are not available under Title III) is available to 'any person who is being subjected to discrimination on the basis of disability' or who has 'reasonable grounds for believing that such person is about to be subjected to discrimination.'" (quoting 42 U.S.C. § 12188(a)(1))).

[7] The same principles apply under an agency theory, looking to whether the alleged principal has the ability to control the agent's actions. *See Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998).

used in the Seventh Circuit. The first sets forth five factors to help determine whether an entity is considered a joint employer:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991). The second considers "the amount of control exerted by the alleged de facto employer, with a particular emphasis on the 'economic realities' of the employment relationship." *Love*, 779 F.3d at 702 (citations omitted). Despite these seemingly separate tests, the *Love* court emphasized that they are not "substantively incompatible," and rather that the *Knight* factors "are simply a more detailed application of the economic and control considerations present in the 'economic realities' test." *Id.*

Determining whether an entity is a joint employer is a fact-intensive inquiry that typically requires further development through discovery, as demonstrated by the cases Citgo cites. *See, e.g.*, *Wilcox v. Allstate Corp.*, No. 11 C 814, 2012 WL 6569729, at *11–13 (N.D. Ill. Dec. 17, 2012) (considering joint employer theory at summary judgment stage); *Clifford v. Patterson Cos.*, No. 08 C 0828, 2009 WL 3852447, at *9–10 (N.D. Ill. Nov. 18, 2009) (same). Penteris alleges that Citgo owned the work site at which he was employed and that the drug test was performed at Turner and Citgo's direction. He further clarifies in his response brief that he was escorted off Citgo's property by Citgo's head of security when he could not provide a urine sample. Doc. 43 at 7; *see Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001) (plaintiff may supplement complaint with additional facts consistent with allegations

in the complaint). It is unclear from the complaint which entity made the termination decision, but drawing inferences in Penteris' favor, his allegations suggest that Citgo exercised control over the administration of the drug test and employment decisions. Discovery may prove otherwise, but the Court finds Penteris' allegations sufficient to meet Rule 8's liberal pleading requirements. *Cf. Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, at *3–5 (N.D. Ill. Apr. 29, 2013) (dismissing temporary employment agency where allegations suggested it was only an intermediary between plaintiff and employer and did not exercise control over plaintiff's day-to-day work or play any role in decision to terminate plaintiff's employment).

Citgo argues that even if the Court finds that Penteris adequately alleges that it is a joint employer, Penteris' claim must still be dismissed because he has not adequately alleged Citgo's involvement in the alleged discrimination nor its knowledge of Penteris' disability. In the Title VII situation, courts have found a joint employer liable where it "knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control." *Shah*, 2013 WL 1828926, at *6. Similarly, in the ADA Title I context, employers are only required to accommodate known disabilities, with an employee normally required to request accommodation before liability attaches. *See* 42 U.S.C. § 12112(b)(5)(A); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176, 1179 (7th Cir. 2013). Citgo contends that Penteris never notified Citgo of his disability, although it admits that the complaint includes an allegation that the diagnosis was conveyed to Turner and Disa. Their knowledge can be imputed to Citgo for purposes of resolving this motion to dismiss, however, because Penteris has alleged that Disa and Priority Staffing conducted the drug test at Citgo's direction and that these entities, as well as Turner, are Citgo's agents. *See Juarez v. Ameritech Mobile Commc'ns*, 957 F.2d 317, 321 (7th Cir. 1992) (agent's knowledge will be imputed to principal where agent receives knowledge

9

while acting within scope of authority, knowledge concerns matter within scope of authority, and agent has duty to speak to principal about specific knowledge).  Citgo also contends that the allegations focus almost exclusively on Turner, Disa, and Priority Staffing, warranting Citgo's dismissal as a party.  Although inartfully pleaded, there is enough in Penteris' complaint to allow his Title I ADA claim to proceed against Citgo.

## III. IHRA Claim

Penteris acknowledges that his IHRA claim is not ripe and was only included in his complaint to reserve his right to bring the claim in the future.  He also acknowledges that he did not file a claim with the IHRA against Disa or Priority Staffing.  Because Penteris admits that the IHRA claim is not ripe, it is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss [21, 26, 38] are granted in part and denied in part.  Penteris' ADA Title I claim is asserted only against Citgo.  Penteris' ADA Title III claim is asserted only against Disa and Priority Staffing.  Penteris' IHRA claim is dismissed without prejudice.  Defendants are ordered to answer the remaining allegations of the complaint by May 20, 2015.

Dated: May 5, 2015

SARA L. ELLIS
United States District Judge